UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

AMANDA M. CALI,

                *Plaintiff*,

    v.

ALEJANDRO N. MAYORKAS, SECRETARY,
DEPARTMENT OF HOMELAND SECURITY,

                *Defendant*.

---

**AMENDED COMPLAINT AND JURY DEMAND**

Civ. No. 22-cv-00942

Plaintiff, Amanda Cali, alleges as follows:

## THE PARTIES

1. The Plaintiff, Amanda Cali, is a natural person, and is female, with a place of residence at 2060 West Blood Road, Elma, New York, 14059.

2. The Defendant, United States Border Patrol, is an agency of the federal government with its principal offices at 1300 Pennsylvania Avenue NW, Washington, DC 20229 and with a facility located at 1708 Lafayette Avenue, Niagara Falls, New York 14305.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to 42 U.S.C. §§ 2000e-5 and 28 U.S.C. §§ 1331 and 1343.

4. Venue is properly laid within the Western District of New York pursuant to 28 U.S.C. § 1391(b) in that the Plaintiff lives in the Western District of New York, the Defendant has

1

business locations in the Western District of New York, and a substantial part of the acts or omissions giving rise to the claim occurred in the Western District of New York.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5. Plaintiff, Amanda Cali, has exhausted all administrative remedies prerequisite to bringing this claim as follows:

6. On September 18, 2020, Plaintiff sent a letter to Edward Payan, Chief Patrol Agent for the Buffalo Sector. In this letter, Plaintiff complained of inappropriate behavior on the part of one Agent Dellavilla. In the letter, Plaintiff alleges that Agent Dellavilla made unwanted physical contact with her, including kissing her, despite her saying specifically she did not want to do this.

7. On December 14, 2020, the Plaintiff filed an Individual Complaint of Employment Discrimination with the Department of Homeland Security alleging unlawful discriminatory practice relating to employment in violation of Article 42 of the Civil Rights Act because of sex (sexual harassment) and opposed discrimination/retaliation. Before filing this claim, the Plaintiff discussed all actions raised in the complaint with an EEO Counselor. The matter was assigned Agency Case Number HS-CBP-02289-2020.

8. On December 22, 2020, the Plaintiff was sent an email from the Agency noting that a DHS Form 3090-1 was attached to begin the formal EEO Complaint process.

9. On May 26, 2021, the Agency sent a letter to Plaintiff's attorney, Lindy Korn, Esq., in which it was noted that due to COVID-19 the Agency was experiencing a significant backlog with their investigations and that it is unlikely Plaintiff's complaint would be processed within the regulatory 180-day timeframe.

10. On February 10, 2022, the Agency sent a letter via email to Plaintiff's attorney, Lindy Korn, Esq., noting the Complaint filed on December 22, 2020 had been assigned to a contract investigator, one Jesus R. Leano.

11. On July 6, 2022, the U.S. Customs and Border Protection agency issued a Report of Investigation (ROI). The ROI contained an election form which had elections of process for the Plaintiff. One of these options was that the Office of Civil Liberties issue a final decision without a hearing based on the existing record. On July 7, 2022, the Plaintiff chose this option.

12. On July 8, 2022, this request was sent by the Plaintiff to the Office for Civil Rights and Civil Liberties, U.S. Department of Homeland Security, for issuance of a final agency decision without a hearing.

13. On September 6, 2022, the Agency issued its Final Agency Decision / Agency's Final Action and shared it with Plaintiff and her attorney via email that same day, advising Plaintiff of her right to file a civil action in an appropriate United States District Court within ninety (90) days after receiving the final decision. That ninety (90) day deadline is December 5, 2022.

14. Plaintiff now elects to proceed in the Federal District Court for the Western District of New York.

## FACTUAL BACKGROUND

15. Plaintiff states that in 2010 the Patrol Agent in Charge (PAIC), or the Deputy Patrol Agent in Charge (DPAIC), became involved. Plaintiff had to report one of them regarding her incident report. Plaintiff was informed that Agent Cervantez had admitted to inappropriate remarks. Plaintiff was told she had a choice of how to handle this situation. The possible steps included a written warning/reprimand or further corrective actions.

16. Plaintiff elected the written reprimand.

17. At this time Plaintiff was asked if she wanted to change shifts in order to avoid Agent Cervantez. Plaintiff declined this action fearing such a sudden shift would cause other agents to gossip about her. As she had only a few months left, she did not want this to happen.

18. However, subsequent to her internal complaint, Plaintiff was forced to ride alone in a vehicle while all other trainees who were male were riding with senior agents.

19. Plaintiff was told she would be fired even after she voiced her concern about riding alone.

20. Plaintiff spoke with another supervisor, a Mr. Moldanado, who had noticed changes in Plaintiff's behavior after the incident. Plaintiff told Mr. Moldanado what had happened. Mr. Moldanado told Plaintiff he was never comfortable with Plaintiff riding with Mr. Cervantez and another agent, a Mr. Pallafox.

21. Plaintiff notes that in 2010 Agent Cervantes was known to send out pornographic pictures and videos of other agents. Plaintiff states that Agent Pallafox was known to have had an affair on duty with a female agent. However, even while knowing of the improper behavior of these two agents, Plaintiff was assigned to ride with them anyway.

22. These actions by Agent Cervantes and the lack of any corrective action by the Plaintiff's supervisors has caused the Plaintiff great emotional distress.

## ACTIONABLE EVENTS

23. Plaintiff is a female Border Patrol Agent who is classified as class 12.

24. On August 18, 2020, Plaintiff arrived at the LPOP/Whirlpool Bridge area sometime after 10:00 PM to relieve the swing shift agent.

25. When Plaintiff arrived at LPOP there were two agents standing outside of their vehicles talking to one another.

26. Plaintiff parked her vehicle, got out, and walked over to talk with them. At some point Border Patrol Agent ("BPA") Kiernan got in his vehicle and took off but BPA Marotta continued to talk. At some point both Marotta and the Plaintiff saw another Border Patrol vehicle drive up to LPOP.

27. In the arriving vehicle was BPA Mark Dellavilla. Dellavilla made a little remark to another agent standing outside the vehicle, teasing him about still being at LPOP even though he was relieved and told him "wait until you come to mids, I'll help straighten you out". It was at that point the other agent got in his vehicle and left the area for the night.

28. Dellavilla remained.

29. Dellavilla became "touchy feely" and got too close to Plaintiff.

30. Dellavilla then grabbed both sides of Plaintiff face and tried to kiss her.

31. Plaintiff put her head down as to prevent Dellavilla from kissing Plaintiff and informed him that she did not want him to kiss her.

32. Plaintiff was very upset and shocked and walked away telling Dellavilla that Plaintiff needed to leave. Plaintiff later requested to go home.

33. Plaintiff was shocked and reported the incident to management. Management failed to conduct a full investigation and prioritized planning a retirement celebration for BPA Dellavilla.

34. Plaintiff had spoken to her station management about attending firearms qualifications during her leave of absence from the end of September 2020 to November 1, 2020. Plaintiff explained to her managers she wanted to attend the firearms qualification with an agent

that she trusted due to the fact she would be around agents from another station who might have known about the LPOP assault.  She was hoping to be with someone she could confide in if she became emotional that day.  This request was denied.

35. On Monday September 15, 2020 Plaintiff arrived at work for her shift.  Plaintiff felt physically ill, as Agent Dellavilla was at the station, and decided to speak to management.  Plaintiff spoke to her Patrol agent in charge (PAIC) Brady Waikel.  During the conversation Plaintiff stated that coming to the station made her physically ill, including vomiting.  The reason for this nervousness was her fear of running into Agent Dellavilla after the assault.

36. During this conversation Brady Waikel supported the Plaintiff but made it obvious that it was important to support Agent Dellavilla for his time in service.  Brady Waikel was seen taking photos of Agent Dellavlla with the plan of presenting them to Agent Dellavialla at his retirement party.   This party never happened because other agents found out about the assault and refused to attend.

37. The Buffalo Sector headquarters requested photos of Agent Dellavilla to put up on the Information Display System (IDS) which broadcasts at the Niagara Falls station and other stations within the Buffalo sector.  This request was made after the LPOP assault which upper management was aware of at the time they requested the photos.  This action shows the callousness by the Plaintiff's management and caused the Plaintiff further emotional distress.

38. A supervisory agent was disturbed by this and addressed his concerns with Agent Brady Waikel stating that he was concerned for the Plaintiff's mental and emotional health, to which Brady Waikel replied that it was time to honor Agent Dellavilla for this time in service regardless of the assault.

39. With a combination of Annual Leave and Sick Leave scheduled (vacation time), the Plaintiff was off work from the end of September 2020 and scheduled to report back to work November 1, 2020. This was to deal with the assault that happened at the LPOP bridge.

40. Plaintiff had to take her own personal time off as the Agency denied additional time off to deal with the assault. The Buffalo Sector Agency violated their own policy which states that only the Chief of the Buffalo Sector can approve or deny administrative leave.

41. Plaintiff was denied her leave for the September 2020 incident and was never given a reason why.

42. On or around September 16, 2020, management informed the Plaintiff that she would be temporarily assigned to the Buffalo Sector headquarters. Plaintiff believes this was an attempt to monitor and scrutinize her. On September 19, 2020, without notifying the Plaintiff, the planned assignment was reversed, and Plaintiff was now scheduled to work at the Niagara Falls Station.

43. Plaintiff was asked by upper management what she needed in order to feel safe returning back to the station. Plaintiff stated she would like to keep the female locker room locked at all times and that she be provided with a key so she could get in and out when she needed.

44. The reason for the key to the female locker room was that other male Agents, including Agent Dellavilla, would frequently use the female locker room. Plaintiff was told it was against regulations to provide her with a copy of the key. Plaintiff did eventually get a key only because upper management at the Sector level discovered this and ordered the Plaintiff's station manager to give her a copy of the key. There were copies of the key available and there would have been no additional cost to provide Plaintiff with a key.

45. During the EEO mediation process it was revealed that Plaintiff was seeking treatment for the assault that occurred at LPOP. A few days after mediation the Plaintiff and her entire shift was drug tested. Plaintiff believes this was the Agency's attempt to determine whether Plaintiff was taking any medications for emotional distress.

46. Plaintiff believes this was unfair as Agent Dellavilla admitted to taking prescription pain medication the night of the assault and blamed the medication for the assault happening. Agent Dellavilla was allowed to work full duty, in uniform with all of his weapons, and was not drug tested for the night of the incident or the month and a half following the incident while he was still working. Agent Dellavilla retired shortly thereafter.

47. The Agency did an inquiry. Plaintiff was interviewed, as was Dellavilla. Plaintiff did her interview from the Avant building in downtown Buffalo. Dellavilla was interviewed via ZOOM from the comfort of his office and was allowed to retire.

48. No corrective action was taken on Dellavilla.

## FIRST CAUSE OF ACTION:
**Unlawful Discrimination Based on Sex in Violation of 42 U.S.C. § 2000e et. seq.**

49. The Plaintiff restates and reasserts the allegations contained in the foregoing paragraphs above as though fully set forth herein.

50. To establish a prima facie case of discrimination, a plaintiff must show four things: (1) she is a member of the protected class; (2) she is qualified for his position; (3) she has suffered an adverse employment action; and (4) the circumstances surrounding that action give rise to an inference of discrimination. 42 U.S.C. 2000e-2; *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466-7 (2d Cir 2001).

51. As to the first element, that she is a member of a protected class: Ms. Cali is female, which is a protected class.

52. As to the second element, that she is qualified for her position: Ms. Cali has reached Grade 12.

53. Plaintiff was sexually harassed in 2020 by Dellavilla when he attempted to kiss her.

54. Plaintiff made complaints about the harassment.

55. No disciplinary action was taken against Dellavilla by Defendant.

## SECOND CAUSE OF ACTION
### Hostile Work Environment Based on Sex in Violation of 42 U.S.C. § 2000e et. seq.

56. The Plaintiff realleges and reasserts the allegations contained in paragraphs above as though fully set forth herein.

57. To plead a claim of hostile work environment, plaintiff must show: (a) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (b) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *Petrosino v. Bell,* 385 F.3d 210 (2d Cir. 2004), citing *Mack v. Otis Elevator Co.,* 326 F.3d at 122 (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.,* 180 F.3d 426, 436 (2d Cir.1999)).

58. A hostile environment is established when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, *Pennsylvania State Police v Suders*, 542 US 129, 124 S.Ct. 2342 (2004).

59. Plaintiff was subject to sexual harassment due to the unwanted touching by Agent Dellavilla.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of 42 U.S.C. § 2000e et. seq.

60. The Plaintiff realleges and reasserts the allegations contained in paragraphs above as though fully set forth herein.

61. To establish a complaint of retaliation it must be shown that 1) there was a complaint of discrimination by Ms. Cali regarding actions by the Defendant, 2) the Defendant was aware of this and; 3) the Defendant engaged in actions that would likely dissuade a reasonable person from pursuing or supporting a claim of discrimination. (See *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 54, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).

62. Here, Plaintiff made complaints about the behavior of Dellavilla.

63. After making her complaints, Plaintiff notes that nothing was done to correct the actions of Dellavilla. Plaintiff asked for time off due to the emotional distress of this situation. Plaintiff was told to provide physician notes. She provided the notes. Plaintiff notes that management was acutely aware of the emotional distress which led to her asking for time off. Defendant drug tested her due to her disclosure that she was in treatment, she was threatened with loss of leave, she was denied a lock to the female locker room, her safety was sundered by Defendant's actions, arbitrarily assigned different work stations, denied her request regarding firearms training, was required to work with Dellavilla by Defendant, and Plaintiff's complaint about Dellavilla resulted in no disciplinary action.

**WHEREFORE**, Plaintiff respectfully requests from this Court the following relief:

A. A judgment that the Defendant violated the Plaintiff's rights under the Civil Right Act of 1964 and Awarding the Plaintiff compensation for her pain and suffering;

  B. Damages for the Plaintiff's pain, suffering, loss of enjoyment of life, humiliation and other injuries in the amount of $300,000.00;

  C. Defendant to pay all medical treatment and therapy treatment costs incurred by Plaintiff as a result of the stress and anxiety resulting from the discrimination she suffered.

  D. Defendant to pay Plaintiff the costs and disbursements of this action, together with reasonable attorney's fees;

  E. Plaintiff to have such other and further relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues properly trial by jury in this action.

Dated: March 17, 2023
    Buffalo, New York

Respectfully Submitted,
Plaintiff
By Her Attorneys

 /s/  **Lindy Korn**
LINDY KORN, ESQ.
Attorney for Plaintiff
Law Office of Lindy Korn, PLLC
Electric Tower, Ninth Floor
535 Washington Street
Buffalo, New York 14203
716-856-5676
716-507-8475 (facsimile)
E-Mail: lkorn@lkorn-law.com