UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AMANDA M. CALI,

                            Plaintiff,

        v.                                                **DECISION AND ORDER**
                                                          22-CV-942S

ALEJANDRO N. MAYORKAS,
*Secretary, Department of Homeland Security*,

                            Defendant.

## I.    INTRODUCTION

In this action, Plaintiff Amanda M. Cali alleges that her employer, the United States Customs and Border Protection division of the Department of Homeland Security ("DHS"), discriminated against her on the basis of sex, subjected her to a hostile work environment, and retaliated against her, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII").

Now pending is DHS's motion to dismiss Cali's amended complaint pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure.[1]  (Docket No. 12.)  For the reasons set forth below, the motion is granted in part and denied in part, and Cali is granted leave to replead consistent with the following decision.

---

[1] In support of its motion, DHS filed a notice of motion, memorandum of law, and a reply memorandum of law.  (Docket Nos. 12, 12-1, 17.)  Cali filed a memorandum of law in opposition.  (Docket No. 14.)  This Court took the motion under advisement without oral argument.

1

## II.    BACKGROUND[2]

This Court assumes the truth of the following factual allegations contained in the amended complaint.  See Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740, 96 S. Ct. 1848, 48 L. Ed. 2d 338 (1976); see also Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir. 1997).

Amanda Cali is a female Border Patrol agent.  Amended Complaint, Docket No. 10, ¶¶ 1, 23.  On August 18, 2020, Cali arrived at the Whirlpool Bridge area[3] sometime after 10:00 p.m. to relieve the swing shift agent.  Id. ¶ 24.  Border Patrol agents Kiernan and Marotta were standing outside of their vehicles talking when Cali arrived.  Id. ¶¶ 25, 26.  After parking her vehicle, Cali walked over to Kiernan and Marotta and joined the conversation.  Id. ¶ 26.  At some point, Kiernan left in his vehicle, as Cali and Marotta continued to talk.  Id.

While Cali and Marotta were talking, Border Patrol Agent Mark Della Villa[4] arrived in his Border Patrol vehicle.  Id. ¶¶ 26, 27.  Cali alleges that Della Villa "made a little remark to another agent standing outside the vehicle, teasing him about still being at [the Whirlpool Bridge area] even though he was relieved and told him 'wait until you come to

---

[2] Cali includes a "Factual Background" section in her amended complaint that recounts an incident that allegedly occurred in 2010.  Amended Complaint, Docket No. 10, ¶¶ 15-22.  Because these allegations do not form the basis of any of Cali's claims, they are not recounted here.  See Memorandum of Law, Docket No. 14, pp. 5-6 (explaining that the "Factual Background" allegations are included solely as background and do not constitute any portion of Cali's asserted causes of action).

[3] Cali describes this area as the "LPOP/Whirlpool Bridge area," but nowhere does she define "LPOP."  For purposes of this motion, this Court construes "LPOP" and the Whirlpool Bridge area to be one and the same.

[4] Cali misspells Della Villa's name as "Dellavilla" in the amended complaint.  See Memorandum of Law, Docket No. 12-1, p. 2 n. 2.  This Court uses the corrected spelling.

mids, I'll help straighten you out.'" Id. ¶ 27.  This "other agent" then departed in his vehicle and left the area for the night, while "Della [Villa] remained."[5]  Id. ¶¶ 27, 28.

After the "other agent" left, Della Villa became "touchy feely" and got too close to Cali.  Id. ¶ 29.  Della Villa then "grabbed both sides of [Cali's] face and tried to kiss her." Id. ¶ 30.  In response, Cali ducked to avoid Della Villa's kiss and told him that she did not want him to kiss her.  Id. ¶ 31.  Shocked and very upset, Cali then told Della Villa that she needed to leave and she walked away.  Id. ¶ 32.  Later in her shift, Cali requested to go home.  Id.  She also reported the incident to management at some point.  Id. ¶ 33.

About one month later, on September 15, 2020, Cali arrived to work her shift, presumably at the Whirlpool Bridge location.  Id. ¶ 35.  Della Villa was at the station, and his presence made Cali physically ill.  Id.  She therefore spoke to Patrol Agent-in-Charge Brady Waikel and informed him that, because of her fear of encountering Della Villa, reporting to the station made her nervous and physically ill, including vomiting.  Id.  Waikel supported Cali, but also "made it obvious" that it was important to support Della Villa as well, given his lengthy service.  Id. ¶ 36.

The next day, September 16, 2020, management informed Cali that she would be temporarily assigned to the Buffalo Sector headquarters.  Id. ¶ 42.  Cali alleges that she was temporarily reassigned so that she could be monitored and scrutinized.  Id.

On September 18, 2020, Cali sent a letter to Edward Payan, Chief Patrol Agent for the Buffalo Sector.  Id. ¶ 6.  She complained about Della Villa's inappropriate behavior

---

[5] Although not at all clear in the amended complaint, this "other agent" appears to be Marotta, since the next set of allegations suggest that Della Villa and Cali remained the only two people in the parking area once this "other agent" left.

and informed Payan that Della Villa made unwanted physical contact with her, including kissing her against her wishes.  Id.  The next day, September 19, 2020, Cali's reassignment to the Buffalo Sector headquarters was reversed, and Cali was instead scheduled to work at the "Niagara Falls station," which, in the context of the surrounding allegations, appears to refer to the Whirlpool Bridge station.  Id. ¶ 42.

Cali alleges that upper management asked her what she needed to feel safe returning back to the station.  Id. ¶ 43.  She requested her own key to the female locker room and that the locker room be kept locked at all times because male agents, including Della Villa, frequently used it.  Id. ¶¶ 43, 44.  Although Cali was initially told that granting her request would violate regulations, upper management ordered the station manager to provide her with a copy of the key.  Id. ¶ 44.

From the end of September to November 1, 2020, Cali took a leave of absence using vacation and sick leave to deal with the episode with Della Villa, after her request for administrative leave was denied without explanation.  Id. ¶¶ 39-41.  Cali advised station management that she wanted to attend firearms qualifications during her leave and explained that she wanted to do so with an agent she trusted.  Id. ¶ 34.  This is because Cali wanted someone she could confide in if she became emotional around agents from other stations who may know about the episode with Della Villa.  Id.  This request was denied.[6]  Id.

In December 2020, Cali filed a discrimination complaint with the Department of Homeland Security and met with an EEO counselor.  Id. ¶ 7.  During the EEO mediation

---

[6] It is unclear whether Cali's request to attend firearms qualification or request to be paired with a trusted agent was denied (or both).

process, it was revealed that Cali was seeking treatment for the episode with Della Villa, which she considered an assault.  Id. ¶ 45.  Several days after that mediation, Cali and her entire shift were drug tested.  Id.  Cali alleges that the drug testing was ordered to determine whether she was taking any medications for emotional distress.  Id.  Della Villa was previously known to be taking prescription pain medication, yet he was never drug tested.  Id. at ¶ 46.

Cali alleges that management failed to conduct a full investigation into Della Villa's conduct and instead prioritized planning his retirement celebration.  Id. ¶ 33.  For example, when Cali informed Patrol Agent-in-Charge Waikel that reporting to the station made her physically ill, he advised her that it was important to support Della Villa because of his lengthy service.  Id. ¶ 36.  Waikel was thereafter seen taking photographs of Della Villa for his retirement party, which never occurred because other agents learned of Della Villa's advances toward Cali and refused to attend.  Id.  Even after a supervisory agent told Waikel that he was disturbed by Della Villa's conduct and concerned for Cali's mental and emotional health, Waikel reiterated that Della Villa should be honored for his years of service, regardless of the allegations.  Id. ¶ 38.  In addition, Buffalo Sector headquarters also requested photographs of Della Villa for use on the Information Display System, which broadcasts to stations in the Buffalo Sector.  Id. ¶ 37.  This request was made after upper management was aware of Cali's allegations against Della Villa.  Id.

Although Cali and Della Villa were both interviewed, no corrective action was ever taken against Della Villa, who retired in December 2020.  Id. ¶¶ 46, 48.

## III.  DISCUSSION

Cali asserts three causes of action, each under Title VII.  First, she claims that DHS discriminated against her based on sex (disparate treatment).  Amended Complaint, ¶¶ 49-55.  Second, she alleges that DHS subjected her to a hostile work environment.  Id. ¶¶ 56-59.  Third, she maintains that DHS retaliated against her for engaging in protected activity.  Id. ¶¶ 60-63.

DHS moves to dismiss Cali's first and second causes of action for failure to state a claim upon which relief can be granted.[7]  See Fed. R. Civ. P. 12 (b)(6).  It does not seek dismissal of her retaliation claim.  Cali opposes the motion.

### A.  Rule 12 (b)(6) Standard

Rule 12 (b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12 (b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  Although Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 555).  "Labels and conclusions" or "a formulaic

---

[7] DHS also seeks dismissal on exhaustion and timeliness grounds of any claims arising from the alleged 2010 incident that Cali includes in her amended complaint.  See Amended Complaint, ¶¶ 15-22.  This request is moot in light of Cali's explanation that she seeks no relief based on this non-actionable incident and that the allegations form no part of her three causes of action.  See Memorandum of Law, Docket No. 14, pp. 5-6.

recitation of the elements of a cause of action" also will not do.  Twombly, 550 U.S. at 555; Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); id. at 679 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").  Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged.  Iqbal, 556 U.S. at 678.  Plausibility requires finding "more than a sheer possibility that a defendant has acted unlawfully," id., but it is not a probability requirement, Twombly, 550 U.S. at 570.  The well-pleaded allegations in the complaint need only nudge the claim "across the line from conceivable to plausible."  Id.

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor.  See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  Legal conclusions, however, are not afforded the same presumption of truthfulness.  See Iqbal, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  "While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." Id. at 662; id. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

A two-pronged approach is thus used to examine the sufficiency of a complaint. This examination is context specific and requires the court to draw on its judicial experience and common sense. See Iqbal, 556 U.S. at 679. First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and factually unsupported legal conclusions, are identified and stripped away. See id. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim. Id.

In considering a motion to dismiss under Rule 12 (b)(6), "a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." Leonard F. v. Isr. Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); see also Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). "[W]here a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect," thereby rendering the document "integral to the complaint." Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002)). But even where a document is "integral" to the complaint, it cannot serve as the basis for

dismissal unless there is no dispute as to its authenticity, accuracy, and relevance.  See Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted).

**B.  Title VII Claims**

**1.  Disparate-Treatment Claim**

DHS argues that Cali's sex-based disparate-treatment claim must be dismissed because she fails to allege that she suffered a qualifying adverse action.  Cali maintains that she has sufficiently alleged an adverse action to survive DHS's motion.

As it relates to covered federal employment, Title VII requires that "[a]ll personnel actions affecting employees or applicants for employment . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-16 (a).   At the pleading stage, a plaintiff need not demonstrate, establish, show, or prove her Title VII claim; she carries only the minimal burden of plausibly "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  See Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  That is, a plaintiff need not initially establish discrimination or allege facts concerning each element of the three-part, burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) that will ultimately govern the claim.  See Littlejohn v. City of New York, 795 F.3d 297, 306, 311 (2d Cir. 2015); Vega, 801 F.3d at 82-84 ("[O]ur decision in Littlejohn makes clear that a plaintiff is not required to plead a *prima facie* case under McDonnell Douglas, at least as the test was originally formulated, to defeat a motion to dismiss.").

To state a Title VII discrimination claim under Iqbal and Twombly, a plaintiff must plausibly allege that "(1) the employer took adverse action against h[er] and (2) h[er] race, color, religion, sex, or national origin was a motivating factor in the employment decision." Vega, 801 F.3d at 87; Doe v. Columbia Univ., 831 F.3d 46, 55 (2d Cir. 2016); Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 71 (2d Cir. 2006).  More expansively, the Second Circuit has described the pleading obligation as follows: "[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent."  Littlejohn, 795 F.3d at 311.

Here, DHS challenges only Cali's adverse-action allegations.  The Second Circuit defines an adverse employment action in this context as a "materially adverse change" in the terms and conditions of an individual's employment.  Sanders v. N.Y.C. Human Res. Admin., 361 F.3d 749, 755 (2d Cir. 2004); Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).

> To be materially adverse a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

Galabya, 202 F.3d at 640 (quotations, citations, and alterations omitted); see also Sanders, 361 F.3d at 755.

Relying on Kennedy v. Bernhardt, DHS argues that Cali's disparate-treatment claim must be dismissed because it is based entirely on hostile-work-environment allegations with no accompanying adverse employment action alleged. 18-CV-647 (JLS), 2020 WL 7399050, at *7 (W.D.N.Y. Dec. 16, 2020). Shifting from the pointed allegations in her amended complaint, Cali maintains that DHS's denial of her request for administrative leave, not Della Villa's conduct, constitutes an adverse action.

Kennedy involves facts strikingly similar to those alleged here. It concerns a female federal employee who alleged that her employer took no remedial action after being informed that her male co-worker sexually harassed and pursued her. Id. at *1. The sexual harassment included the harasser making inappropriate comments to Kennedy about his sex life, lingering in and around her office unnecessarily, inviting her to lunch repeatedly, and contacting her personal telephone regularly. Id. Although Kennedy reported this harassment to her supervisors, they took no action against the harasser and failed to ameliorate the situation, including refusing to grant Kennedy's request for leave. Id.

Kennedy asserted a Title VII sex-based disparate-impact claim grounded in the above sexual-harassment allegations, along with other Title VII and Rehabilitation Act claims. Id. In examining the disparate-impact claim, the Kennedy court found that individual sexual-harassment allegations could not be aggregated to show an adverse action, thereby rejecting the "atmosphere" theory of adverse employment action in the Title VII context. Id. at *7-8; Phillips v. Bowen, 278 F.3d 103, 109 (2d Cir. 2002)

(employing "atmosphere" theory in First Amendment retaliation case).  It further explained that "while [Kennedy's harasser's] actions may have resulted in an unpleasant work environment, Kennedy has not connected those actions to 'a material loss in pay, promotion, opportunity, prestige, reputation or workplace accomplishments, or some similar actions.'"  Id. (quoting Setelius v. Nat'l Grid Elec. Servs. LLC, No. 11-CV-5528 (MKB), 2014 WL 4773975, at *9 (E.D.N.Y. Sept. 24, 2014)).  The court therefore dismissed the disparate-impact claim on the basis that none of the incidents of alleged sexual harassment alone qualified as a discriminatory adverse employment action to sustain a Title VII disparate-impact claim.  Kennedy, 2020 WL 7399050, at * 8.

The same applies here.  For her disparate-impact cause of action, Cali identifies the adverse action taken against her as "Plaintiff was sexually harassed in 2020 by Della [Villa] when he attempted to kiss her."  Amended Complaint, ¶ 53.  But Cali ties neither Della Villa's actions nor DHS's alleged failure to address them to "a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities," or anything of the like.  See Galabya, 202 F.3d at 640.  She alleges no "materially adverse change" in the terms and conditions of her employment as a result of Della Villa's conduct. See Sanders, 361 F.3d at 755.  Della Villa's alleged attempt to kiss Cali therefore does not satisfy the adverse-action requirement for a disparate-impact claim.  See Kennedy, 2020 WL 7399050, at * 8.

Tellingly, Cali does not defend Della Villa's conduct as an adverse action in response to DHS's argument.  She instead maintains that she suffered an adverse action when DHS denied her request for administrative leave, forcing her to exhaust her vacation

and sick leave.  See Amended Complaint, ¶¶ 39-41.  The denial of paid administrative leave, however, does not qualify as an adverse employment action.  See Smith v. City of New York, 385 F. Supp. 3d 323, 336 (S.D.N.Y. 2019) ("Numerous courts in this District have held that denial of administrative leave is not an adverse employment action, even when the denial causes the employee to use allotted sick days.") (collecting cases); Krishnapillai v. Donahoe, No. 09-CV-1022 (NGG) (SMG), 2013 WL 5423724, at *10 (E.D.N.Y. Sept. 26, 2013) ("[T]he denial of administrative leave—in favor of allowed sick leave—does not impact the terms or conditions of employment and therefore is not an adverse employment action").  Cali therefore fails to allege an adverse action on this basis as well.

Because Cali fails to allege an adverse employment action, her first cause of action for disparate treatment must be dismissed for failure to state a claim upon which relief can be granted.  See Vega, 801 F.3d at 87 (requiring that a plaintiff allege that the employer took adverse action against him or her to state a disparate-treatment claim). DHS's motion will therefore be granted as to this claim.

### 2.  Hostile Work Environment

DHS argues that Cali's hostile-work-environment claim must be dismissed because Della Villa's attempt to kiss Cali was an isolated incident that is not severe enough to support her claim.  Cali maintains that she plausibly alleges a sufficiently severe incident.

The Supreme Court has held that Title VII's protections extend beyond "economic" or "tangible" discrimination.  Harris v. Forklift Sys., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993) (citing Meritor Sav. Bank, FSV v. Vinson, 477 U.S. 57, 64, 106

S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).  That is, Congress enacted Title VII to "strike at the entire spectrum of disparate treatment of men and women in employment," including the requirement that employees work in a hostile or abusive environment.  <u>Harris</u>, 510 U.S. at 21.

Accordingly, "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." <u>Id.</u> (quotation marks and citations omitted).  But "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." <u>Id.</u> at 21.  So too, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." <u>Id.</u>

To state a hostile-work-environment claim under Title VII, a plaintiff must plausibly allege that the complained of conduct "(1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex." <u>Patane v. Clark</u>, 508 F.3d 106, 113 (2d Cir. 2007) (quoting <u>Gregory v. Daly</u>, 243 F.3d 687, 691-92 (2d Cir. 2001)); <u>Anderson v. City of New York</u>, No. 22 Civ. 3990 (NSR), 2024 WL 183103, at *8 (S.D.N.Y. Jan. 17, 2024).

DHS argues that Cali fails to allege a sufficiently severe or pervasive work environment because Della Villa's conduct toward Cali is not serious enough to support

a single-incident hostile-work-environment claim.  Whether workplace discrimination is sufficiently severe or pervasive depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris, 510 U.S. at 23.  "While each of these elements is relevant to the inquiry, no single factor is required."  Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004) (internal quotation marks omitted).

Isolated incidents of harassment ordinarily do not amount to a hostile work environment.  See Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000)  But if "extraordinarily severe," a singular, isolated instance of workplace abuse may support a hostile-work-environment claim.  See Desardouin v. City of Rochester, 708 F.3d 102, 105 (2d Cir. 2013); Cruz, 202 F.3d at 570 (noting that a plaintiff must show "either that a single incent was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment") (internal quotation marks omitted).  While the single incident need not involve an actual or threatened physical assault, see Williams v. N.Y.C. Hous. Auth., 154 F. Supp. 2d 820, 823 (S.D.N.Y. 2001), it must be severe enough to "work[ ] a transformation of the plaintiff's workplace," Feingold v. New York, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted).

DHS maintains that "[t]he Second Circuit has repeatedly rejected efforts to base hostile work environment claims based [sic] on incidents involving attempted or actual kissing."  Memorandum of Law, Docket No. 12-1, p. 12.  Although it may have rejected such efforts in individual cases, it has not rejected such claims categorically.  Instead, the

Second Circuit has deliberately avoided enunciating regimented standards to ensure adequate flexibility in effectuating Title VII's broad remedial purpose.  <u>See</u> <u>Williams</u>, 154 F. Supp. 2d at 823 (citing <u>Daniels v. Essex Grp., Inc.</u>, 937 F.2d 1264, 1271 (7th Cir. 1991)).  Cali's claim is thus not categorically precluded simply because it involves an attempted or actual kiss.

The allegations here concern Cali's claim that Della Villa assaulted her in the station parking lot on the night of August 18, 2020.  Amended Complaint, ¶¶ 24, 29, 30, 59.  Upon arriving in the parking lot where Cali was engaged in conversation with another agent, Della Villa made statements to the agent that prompted him to leave.  <u>Id.</u> ¶ 27. Now alone with Cali, Della Villa invaded her personal space and became "touchy feely" with her, suggesting groping or other inappropriate sexual physical contact.  <u>Id.</u> ¶¶ 28-29. Della Villa then "grabbed" both sides of Cali's face and attempted to kiss her, as the two remained alone in the parking lot.  <u>Id.</u> ¶ 30.  Cali "put her head down," as Della Villa gripped it, in an effort to avoid Della Villa's physical advances, and she told him that she did not want him to kiss her.  <u>Id.</u>  The event was traumatic enough to cause Cali to subsequently be nervous and physically ill in Della Villa's presence, as well as fearful that she may encounter him or other male agents in the female locker room at the station.  <u>Id.</u> ¶¶ 35, 43, 44.  It also required that she seek mental-health treatment for assault.  <u>Id.</u> ¶¶ 39, 45.

DHS's only argument in favor of dismissal is that this conduct is akin to that which courts in this circuit have rejected as insufficiently severe to support the objective component of a single-incident hostile-work-environment claim.  But close examination of DHS's cases reveals that they are factually dissimilar.

DHS first cites <u>Chenette v. Kenneth Cole Products, Inc.</u>, which involved a single kiss.  345 F. App'x 615 (2d Cir. 2009) (summary order).  Chenette was a female working in a department where everyone but the manager was also female.  <u>Id.</u> at 617.  On one occasion, while Chenette was walking to her desk, a female co-worker stopped her to apologize for previously mistreating her on the telephone.  <u>Id.</u>  After the apology, the female co-worker petted Chenette's cheek with her two hands and kissed Chenette on the lips.  <u>Id.</u>  The Second Circuit found that the kiss, standing by itself, was not violative of Title VII, and it stated that "'[n]o reasonable person could have believed that [a] single incident' of sexually inappropriate behavior by a co-worker could amount to sexual harassment."  <u>Id.</u> at 619 (quoting <u>Clark Cnty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 271, 121 S. Ct. 1508, 149 L.Ed.2d 509 (2001)).

<u>Chenette</u> does not involve an overtly sexual male-on-female forced kiss, as is present here.  And it is not at all clear that the kiss in <u>Chenette</u> was even sexual, although the Second Circuit assumed for purposes of analysis that it was.  <u>See</u> <u>Chenette</u>, 345 F. App'x at 619.  There were also no allegations of physical groping, as here, and the incident did not occur in a secluded outdoor area of the workplace.  Moreover, the Second Circuit's findings in <u>Chenette</u> came in the context of a Title VII retaliation claim, not a hostile-work-environment claim, and they came on review of summary judgment, not the sufficiency of pleading at the motion-to-dismiss stage.  <u>Chenette</u> is therefore distinguishable.

DHS next cites another summary order, <u>Cook v. New York City Department of Education</u>, which involved an attempted kiss.  90 F. App'x 562 (2d Cir. 2004) (summary order).  There, a male school superintendent attempted to kiss a female school principal

on the mouth.   Id. at 563.   In reviewing Cook's hostile-work-environment claim, the Second Circuit found that the isolated act was insufficiently serious or pervasive to support Cook's claim.   Id.

Here again, the facts are dissimilar.   Few of the facts are recounted in Cook, but those that are do not involve physical groping followed by a forcible grabbing of the head while a kiss is attempted in a secluded outdoor area.   And Cook too involved review on summary judgment, not a sufficiency-of-the-pleadings examination.   Cook is therefore not instructive.

Finally, DHS cites the Second Circuit's summary order in Carter v. State of New York. 151 F. App'x 40 (2d Cir. 2005) (summary order).   There, the Second Circuit rejected as insufficiently severe conduct that involved "[t]hree kisses on the cheek in a two-year period."   Id. at 41.   No physical groping is involved nor is any force recounted.   Carter too is therefore distinguishable.

In arguing that the conduct in Chenette, Cook, and Carter is less severe than the conduct here, DHS fails to acknowledge Cali's allegations of physical, sexual groping; fails to account for the secluded, outdoor, nighttime setting; and fails to draw the facts and all inferences in Cali's favor.   None of DHS's cases—neither the principal ones nor the string-cited ones—require dismissal at the pleading stage.   Each case is factually or procedurally distinguishable, or both.

In this Court's view, Cali pleads facts that, when assumed true and drawn in her favor, plausibly allege an objectively severe work environment that a reasonable person could find hostile or abusive.   See Patane, 508 F.3d at 113.   Della Villa isolated Cali at night in a parking lot, physically and sexually groped her ("touchy feely"), and then

grabbed her head and forcibly tried to kiss her.   Such conduct plausibly "work[ed] a transformation of [Cali's] workplace."   See Feingold, 366 F.3d at 150.   This Court therefore finds that Cali adequately pleads objectively serious conduct to defeat DHS's motion.   Cf. Anderson, 2024 WL 183103, at *8 ("To survive a motion to dismiss [a hostile-work-environment claim], a plaintiff need only 'plead facts sufficient to support the conclusion that she was faced with harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'") (quoting Donahue v. Asia TV USA Ltd., 208 F. Supp. 3d 505, 514 (S.D.N.Y. 2016)).   DHS's motion to dismiss Cali's second cause of action will therefore be denied.

**C.   Leave to Amend**

Cali requests leave to replead any deficient claims.   See Memorandum of Law, Docket No. 14, p. 13.   It is the usual practice to allow leave to replead upon granting a motion to dismiss.   Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991); Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith."); Fed. R. Civ. P. 15 (a)(2) ("The court should freely give leave [to amend] when justice so requires.").   And while a district court does not abuse its discretion by denying leave to replead in the absence of such a request, see Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011), "leave to amend should be freely given unless there is 'any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.,'" see Metzler Inv. Gmbh v.

Chipotle Mexican Grill, Inc., 970 F.3d 133, 148 n.4 (2d Cir. 2020) (quoting Foman v. Davis,

371 U.S. 178, 182-83, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962)).

This Court cannot conclude at this time that the deficiencies in Cali's disparate-

impact claim cannot be cured by further pleading or that further pleading would

necessarily be futile.  Leave to replead that claim is therefore granted.[8]

## IV.    CONCLUSION

For the reasons stated above, this Court finds that DHS's motion to dismiss must

be granted in part and denied in part.  Cali has sufficiently pleaded a Title VII hostile-work-

environment claim, but she has failed to state a Title VII disparate-impact claim.  Cali is

granted leave to replead as explained above.

## V.    ORDERS

IT HEREBY IS ORDERED, that the DHS's motion to dismiss (Docket No. 12) is

GRANTED IN PART and DENIED IN PART, consistent with the foregoing decision.

FURTHER, that Cali is afforded leave to replead through the filing of an amended

complaint within 14 days of the entry date of this decision.

---

[8] Although Cali has already amended her complaint once, she did so as a matter of right, without the benefit of the analysis herein.  This Court therefore finds it appropriate to provide a further opportunity to replead.

FURTHER, that DHS must answer the complaint or respond to the amended complaint, if filed, within 28 days of the entry date of this decision.

SO ORDERED.

Dated:       August 20, 2024
             Buffalo, New York

s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge